**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KENNETH EUGENE SPEIGHT, | ) | |
| | ) | |
| Petitioner, | ) | C.A. No. 07-15 Erie |
| | ) | |
| v. | ) | |
| | ) | **District Judge McLaughlin** |
| WARDEN H.J. MARBERRY, | ) | **Chief Magistrate Judge Baxter** |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by federal prisoner Kenneth Eugene Speight be denied, and that a certificate of appealability be denied.

### II.     REPORT

Petitioner is serving a federal sentence imposed by the United States District Court for the Northern District of New York. His projected release date is September 16, 2008. Petitioner was incarcerated at the Federal Correctional Institution ("FCI") Allenwood from July 30, 2002 through June 13, 2005. He is currently incarcerated at FCI McKean in Bradford, Pennsylvania. His habeas petition is filed pursuant to 28 U.S.C. § 2241. (Docket # 3). He claims that he was denied due process in an inmate disciplinary proceeding regarding a February 28, 2005 fight he had with his cellmate while he was incarcerated at FCI Allenwood. For relief, he seeks the restoration of good conduct time.

#### A.      Relevant Factual and Procedural History

On February 28, 2005, at 7:46 p.m., Senior Officer Specialist R. Spotts of FCI Allenwood responded to an inmate lying on the floor of the third tier of the facility. (Ex.[1] B). Spotts reported that

_____

[1] Unless otherwise noted, all "Ex." citations are to those documents attached to the Response (Docket # 7).

the inmate, Petitioner, was conscious, but not responsive. Spotts discovered blood on the range in the area of Petitioner's head and noted that Petitioner was tightly grasping a ball point pen, with its point exposed. Spotts removed the pen from Petitioner's hand and called a medical emergency. (Id.; Ex. D). Lieutenant Shepard and Officer Brown responded and found Petitioner on the floor near his assigned cell. (Ex. C, Ex. D). Petitioner was removed to the prison's Health Services Department, where his injuries were medically assessed. (Ex. E). In response to questioning about his injuries, Petitioner admitted that he had been in an argument with his cellmate, Russell Stringfield, over flushing the toilet, but stated that he could not remember anything else. Petitioner was then placed in the prison's Special Housing Unit ("SHU"). (Ex. C).

Lieutenant Shepard questioned inmate Stringfield about the incident. After Lieutenant Shepard observed blood on Stringfield's face, Brown searched him and found superficial abrasions to his chest, a puncture wound on his face, and a puncture wound on his shoulder. Stringfield stated that he was involved in an argument with Petitioner over flushing the toilet. He said that Petitioner walked over to him and started swinging at him while holding a pen in his hand. (Id.; Ex. D). Stringfield also was placed in the SHU.

The injury assessment forms for both Petitioner and Stringfield show injuries consistent with a fight. Petitioner's form records that he said he was walking from his cell and "the next think he knew he was on the floor and his head hurt[.]" (Ex. E). Stringfield's form records his statement that he incurred his injury when another inmate "attacked me with an ink pen." (Ex. F).

On March 1, 2005, at 12:45 p.m., an incident report was delivered to Petitioner, notifying him that he was charged with fighting, in violation of Code 201, and with possession of a weapon, in violation of Code 104. (Ex. G, part I). Investigation of Petitioner's incident report was suspended pending its referral for possible prosecution. (Id., part III). On March 8, 2005, prosecution was declined, and on the following day Lt. Litchard investigated the Incident Report and provided Petitioner with a copy. Petitioner denied fighting to the investigating officer, and claimed that he had the flu and had passed out on the tier. Petitioner did not request any witnesses at the time. (Id.)

On March 14, 2005, the Unit Disciplinary Committee ("UDC") convened to review the Incident Report with Petitioner. The UDC was comprised of staff chairman J. Simmons and staff member H.R.

Sims. Petitioner stated to the UDC, "I don't know what happened." (Id., part II; see also Ex. H). The UDC referred the Incident Report to the Discipline Hearing Officer ("DHO") due to the severity of the misconduct, which warranted consideration of sanctions greater than those which the UDC could impose. (Id.) The UDC then advised Petitioner of his rights before the DHO and asked him if he wanted a staff representative and if he wanted to present any witnesses on his behalf. Petitioner requested Officer White as his staff representative. (Ex. H). Sims recorded that Petitioner wanted to present inmate Stringfield as a witness. She also recorded that Petitioner could not state the name of two other witnesses he wanted to call, but that Petitioner did indicate that he wanted the evening watch officer and the unit officer on duty at the time of the incident. (Id.)

The DHO hearing was conducted on March 31, 2005 before K. Bittenbender. (Ex. I). Petitioner's requested staff representative, Officer White, was not available due to his work schedule. To avoid delaying the hearing, Petitioner elected to request a staff member who was available, Officer K. Eckroth. Bittenbender's report documents that Eckroth met with Petitioner in advance of the hearing. Eckroth noted no discrepancies in the discipline process. (Id., part II.E).

At the DHO hearing, Petitioner stated that, to his best recollection, he awoke on the tier with the lieutenant standing over him and asking him what had happened. Petitioner further stated that he had several lumps on his head and that he did not remember how he had gotten them. (Id., part III.B). The only witness Petitioner requested was inmate Stringfield. Bittenbender, however, did not allow Stringfield to testify because Stringfield had been directly involved in the altercation and any statement made by him would have been considered to have been made under compromising conditions. (Id., part III.C).

At the conclusion of the hearing, Bittenbender found that Petitioner had committed the prohibited acts for which he was charged. He explained that he based his decision on the memoranda from Lt. Shepard, Officer Brown, and Officer Spotts, describing the discovery of the injured inmates and the pen clutched in Petitioner's hand; the injury assessment forms, which indicated that the inmates had injuries consistent with those incurred in a physical altercation; the photographs of the inmates, which documented those injuries; and, Petitioner's admission that he had argued with his cellmate just prior to the incident. Bittenbender also considered Petitioner's claim that he did not remember what

3

had happened, and noted that Petitioner did not admit or deny the charges. He concluded that the greater weight of the evidence supported the finding that Petitioner had committed the prohibited acts of "Fighting with Another Person" (Code 201), and "Possession, Manufacture, or Introduction of a Weapon" (Code 104). (Id., part V). He imposed separate sanctions for each code violation. (Id., part VI).

On April 15, 2005, Petitioner filed an appeal of Bittenbender's decision to the Regional Director of the BOP. (Ex. K). He alleged that his Incident Report was falsified and claimed (erroneously) that the same staff member wrote and investigated the Incident Report; that UDC member Sims had disrupted the hearing and refused to write down Petitioner's witnesses; that he had objected to Eckroth being appointed as his staff representative; that both Eckroth and Bittenbender made false statements; and that Bittenbender was biased against him because he was a defendant in a lawsuit filed by Petitioner. He also argued that an ink pen was not a weapon. The BOP's Regional Director, D. Scott Dodrill, issued the following response:

> While it was reasonable for the DHO to determine you committed the prohibited acts, the evidence supports that your behavior is more accurately summarized as engaging in a fight. As such, offense Code 104 [possession of a weapon], will be expunged from your record. You will receive an amended DHO report indicating expungement of offense Code 104.
>
> A review of the disciplinary proceedings reveals a UDC hearing was conducted on March 14, 2005. You made a statement and were advised that the incident report would be referred to the DHO for further hearing. At that time, you requested a staff representative and two witnesses. At the DHO hearing, a staff representative appeared on your behalf. There is no indication you raised any issues with the staff representative or that you made any specific requests that were not honored. Records also indicate one of your witnesses was not called as he was the other inmate involved and properly determined to be an adverse witness. You could not identify the second witness, and therefore, this individual could not be called to provide a statement. You have failed to present any evidence you did not have a fair and impartial DHO hearing or that any staff member acted inappropriately during the disciplinary proceedings.
>
> …The decision of the DHO was based on the greater weight of the evidence and the sanctions imposed were consistent with the severity level of the prohibited act. The sanctions imposed, 30 days disciplinary segregation, disallow of 27 days good conduct time, forfeit 20 days non-vested good conduct time and 180 days loss of commissary privileges for Code 201, were not disproportionate to your misconduct. Accordingly, your appeal is partially granted in that offense Code 104 will be expunged.

(Id. at 4-5).

Thereafter, the Code 104 violation was expunged from Petitioner's record. (Exs. L & M). On

4

June 3, 2005, Petitioner appealed to the BOP's Central Office. (Ex. N). He once again challenged the accuracy of the DHO report, claimed procedural irregularities with regard to Eckroth's appointment as his staff representative, and claimed that Bittenbender was biased against him. He requested expungement of the entire Incident Report. (Id.)

On September 2, 2005, Harrell Watts, Administrator, National Inmate Appeals, issued the following response denying Petitioner's appeal:

> You state the lack of recordings of discipline hearings calls into question the reliability and accuracy of reports of such hearings. Program Statement 5270.07 provides that reports of discipline hearings be an accurate reflection of the hearing. These reports are not and need not be verbatim. There is no evidence the DHO report in this case is in error.

> You state the staff representative [Eckroth] failed to fulfill his duties as such. When the staff member you originally requested as staff representative could not appear at the hearing, you selected another staff member for this role. There is no evidence you did not meet with your staff representative prior to the commencement of the hearing. Neither did you request that the hearing be deferred to a later date.

> You state the DHO [Bittenbender] was not impartial and is not qualified to make legal decisions. There is no evidence the DHO is biased or manifests any conflict of interest. The DHO is a fully qualified and certified fact finder.

> Based on our review of the disciplinary record, we find the required disciplinary procedures were substantially followed, the greater weight of the evidence supports the DHO's decision, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with policy.

(Id. at 4).

In January 2007, Petitioner commenced this proceeding by filing his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion to proceed *in forma pauperis*. (Docket # 3). He claims that his due process rights were violated and that he did not violate Code 201. For relief he seeks an award of the 27 days of good conduct time and the restoration of the 20 days of non-vested good conduct time. Respondent, the Warden of FCI McKean, has filed her Response (Docket # 7), Petitioner has filed a Reply (Docket # 9), and Respondent has filed a Sur-Reply (Docket # 10).

### B. Subject Matter Jurisdiction

A challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255, but a claim concerning execution of a federal sentence by the Bureau of Prisons ("BOP") is properly brought under

5

28 U.S.C. § 2241. <u>Bennett v. Soto</u>, 850 F.2d 161 (3d Cir. 1988); <u>Gomori v. Arnold</u>, 533 F.2d 871 (3d Cir. 1976). "Execution of a sentence" includes matters such as the computation of a prisoner's sentence by the BOP, prison disciplinary actions, prison transfers, and type of detention. Because Petitioner is challenging the execution of his sentence in the petition for habeas relief, this proceeding is properly brought under 28 U.S.C. § 2241.

### C.  Exhaustion of Administrative Remedies

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his claim to federal court. <u>United States v. Wilson</u>, 503 U.S. 329, 334-35 (1992); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3d Cir. 1996). The BOP is the agency charged with administering the federal prison system, <u>Wilson</u>, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process. The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners seeking administrative review of any aspect of their confinement. Respondent acknowledges that Petitioner has pursued an appeal of the challenged action through all levels of administrative review and, hence, available administrative remedies have been exhausted in this case. <u>See</u> 28 C.F.R. §§ 542.13-15.

### D.  Discussion

### (1)

Through a review of federal case and docket information available via Public Access to Court Electronic Records ("PACER"), this court has learned that Petitioner is a prolific filer of lawsuits and that at least three actions in the United States District Court for the Middle District of Pennsylvania are relevant to the present action. Each case was assigned to the Honorable Richard B. Conaboy. This court will take judicial notice of each case's docket and the documents contained therein, which are available for review on that court's electronic case filing system.

<u>Speight v. Lyons, et al.</u>, Civil Action No. 05-322 (M.D. Pa.), is a civil rights lawsuit that Petitioner commenced prior to the events in this case. It is relevant to this proceeding only to the

6

extent that DHO Bittenbender, Lt. Shepard, and UDC member Sims are three of the nine named defendants in that case. Petitioner originally filed Speight v. Lyons in the United States District Court for the District of Columbia on or around June 30, 2004. It was transferred to the Middle District of Pennsylvania on February 15, 2005.

Speight v. Minor, Civil Action No. 06-1377 (M.D. Pa.), is an habeas corpus case in which Petitioner challenged the loss of good time credits resulting from another disciplinary hearing presided over by DHO Bittenbender. That case concerned a May 31, 2005 incident after which Petitioner was charged with a violation of Code 312, "insolence toward a staff member." After a June 2, 2005 disciplinary hearing, Bittenbender found that Petitioner had committed the prohibited act and sanctioned him with the loss of good time credits. In Petitioner's subsequent habeas petition, Petitioner contended, as he does here, that his due process rights were violated because Bittenbender is biased against him since he is a named defendant in Speight v. Lyons. On February 2, 2007, Judge Conaboy dismissed the petition as being without merit and expressly rejected Petitioner's allegation that Bittenbender was biased. The United States Court of Appeals for the Third Circuit affirmed on August 28, 2007 in a non precedential opinion, Speight v. Minor, Appellate Docket No. 07-1540, slip op. (3d Cir. Aug. 28, 2007) (per curiam).

Finally, Speight v. Shepard et al., Civil Action No. 07-394 (M.D. Pa.) is a civil rights lawsuit regarding the events at issue in this case: Petitioner's February 28, 2005 fight with Stringfield and the disciplinary proceedings resulting from that incident. Petitioner commenced that action on March 1, 2007, and he named DHO Bittenbender, Lt. Shepard, UDC member Sims, and staff representative Eckroth as defendants. He raised, *inter alia*, some of the same due process claims that he raises in the instant petition. On February 8, 2008, Judge Conaboy issued a Memorandum and Order dismissing Petitioner's complaint in its entirety and closing the case. Speight v. Shepard et al., Civil Action No. 07-394, slip op. (M.D. Pa. Feb. 8, 2008). He held that some of Petitioner's claims were subject to dismissal pursuant to Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997), but he did rule on the merits of some of Petitioner's due process claims to the extent that Petitioner asserted that the claims did not implicate the invalidity of his DHO hearing. When relevant,

Judge Conaboy's rulings will be discussed below.[2]  Petitioner appealed to the Third Circuit Court and that appeal is pending at Appellate Docket 08-2039.

**(2)**

Under 28 U.S.C. § 2241(c), a writ of habeas corpus shall not extend to a prisoner unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This court's analysis of Petitioner's federal constitutional claims begins with the United States Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings.  In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest.  Wolff, 418 U.S. at 556-57.  However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding.  Id.  Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (*i.e.*, good time credit) "*is not arbitrarily abrogated*."  Id. at 557 (emphasis added).

In Wolff, the Supreme Court enumerated the minimal procedural protections required when the loss of good time credits is at stake in prison disciplinary proceedings.  In relevant part, Wolff requires: (a) the right to appear before an impartial decision-making body; (b) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; and (c) assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved.[3]  Id. at 563-72.

---

[2]  Because Petitioner has appealed Judge Conaboy's decision, his rulings do not have any preclusive effect; however, his rulings nonetheless have persuasive effect on this court.  See Brown v. Nash, 247 Fed.Appx. 406 (3d Cir. 2007) (applying doctrine of collateral estoppel, or issue preclusion, in a 28 U.S.C. § 2241 proceeding, but noting the requirement of finality).

[3]  Speight does not make any claims as to the two additional procedural safeguards under Wolff – written notice of the charges 24 hours in advance of the disciplinary hearing; and, a written decision by the factfinder as to the

(continued...)

8

In addition to the procedural protections outlined in Wolff, the Supreme Court in Superintendent v. Hill, 472 U.S. 445 (1985), held that requiring "a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." Id. at 455. The Supreme Court then held "that the requirements of due process are satisfied if *some evidence* supports the decision by the disciplinary board to revoke good time credits." Id. (emphasis added); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). Once the reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Id. "*Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence.*" Id. at 455-56 (emphasis added).

Petitioner has failed to establish that he was denied any process due to him under the Due Process Clause. He asserts that he did not receive Wolff's first guarantee – the right to appear before an impartial decision-making body.[4] Federal regulations governing the impartiality of the disciplinary hearing officer require that: "in order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16(b). Nothing in this regulation disqualified Bittenbender from presiding over the challenged disciplinary proceeding as DHO. Petitioner does not dispute this, but argues that DHO Bittenbender was biased against him because he was named as a defendant in Speight v. Lyons. As noted above, Judge Conaboy rejected a similar claim in Speight v. Minor and the Third Circuit Court affirmed. Speight v. Minor, Appellate Docket No. 07-1540, slip op. at 6-7. It held:

> We also agree with the District Court that even though DHO Bittenb[e]nder was named in one of Speight's lawsuits, he did not lack the necessary impartiality to preside over Speight's [June 2, 2005] disciplinary hearing in this matter. "[T]he requirement of an

---

[3](...continued)
evidence relied upon and the rational behind the disciplinary action.

[4] Petitioner also argues that he was denied due process because Bittenbender had no legal training. Wolff does not require that a DHO have legal training.

impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgment or decision-making role, in the circumstances underlying the charge." Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974); see also Rhodes v. Robinson, 612 F.2d 766, 773 (3d Cir. 1979). If a prisoner could disqualify hearing officers through instituting lawsuits against them, a prison's ability to conduct disciplinary hearings would be seriously compromised. See Redding v. Fiarnan, 717 F.2d 1105, 1113 (7th Cir. 1983). Here, there is no record evidence that Bittenb[e]nder had any personal involvement in the circumstances underlying Speight's charge.

Id.

Petitioner's claim in this case that his due process rights were violated because Bittenbender was impartial is rejected for the same reasons articulated by the Third Circuit Court in Speight v. Minor. Bittenbender did not have any direct personal involvement or otherwise substantial involvement in the February 28, 2005 incident that was the subject of the disciplinary hearing, and the fact that Petitioner had named him as a defendant in Speight v. Lyons did not disqualify him from presiding over the March 31, 2005 disciplinary hearing.

Petitioner also claims that UDC member Sims was biased against him because she was one of the defendants in Speight v. Lyons. He also contends that Sims denied him the ability to call witnesses at the UDC hearing and made false entries in the record with the intent to impair his defense at the subsequent DHO hearing. This claim is without merit. Petitioner raised the same or similar claim in Speight v. Shepard, and Judge Conaboy held that his assertions regarding Sims do not amount to a due process violation. Speight v. Shepard, Civil Action No. 07-394, slip op. at 12-20. This court agrees. Petitioner cannot establish that he was deprived of a legally cognizable liberty interest as a result of Sims' alleged conduct at the UDC hearing because the decision to sanction him with the loss of his good conduct time was made by Bittenbender after the DHO hearing, and Bittenbender had the independent authority to allow Petitioner to call witnesses. As Judge Conbay observed, "the record developed at the UDC hearing was a nullity given the independent authority and responsibility of the DHO to develop the record anew." Id. at 19.

Petitioner next claims that he was denied Wolff's requirement that he be afforded the right to call witnesses at the DHO hearing. Consistent with Wolff, the Federal Regulations provide:

An inmate has the right to submit names of requested witnesses and have them called to testify and to present documents in the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten

10

institutional or an individual's security. The DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available. . . . The DHO need not call repetitive witnesses. *The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO.* . . . The DHO shall document reasons for declining to call requested witnesses in the DHO report[.]

28 C.F.R. § 541.17(c) (emphasis added).

At the DHO hearing, Bittenbender recorded that the only witness Petitioner wanted to call was inmate Stringfield. (Ex. I, part III.C). Bittenbender denied that request because Stringfield was directly involved in the altercation. Therefore, Stringfield was considered an adverse witness. (Id.; see also Ex. K at 5). Additionally, Stringfield's statements regarding the event had already been recorded in the memoranda prepared by staff members. Bittenbender recognized that if Stringfield (who also had been disciplined for participating in the fight) testified contrary to the contemporaneous records of the incident, he would consider Stringfield's testimony as compromised and not credible. (Id.) Bittendender's decision to disallow Stringfield as a witness was not in violation of the requirements of Wolff or the BOP regulations.

In his next challenge to the DHO hearing, Petitioner claims that he was denied assistance from an inmate representative. Wolff only requires that an inmate receive assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved, and neither circumstance was present in Petitioner's case. Thus, as Judge Conabey held in dismissing the same or similar claim, Petitioner was not entitled to a staff representative under Wolff and his assertions regarding Eckroth's alleged misconduct do not implicate his due process rights. Speight v. Shepard, Civil Action No. 07-394, slip op. at 20-21.

This court also observes that the Federal Regulations provide the following additional requirements regarding staff representatives:

The Warden shall provide an inmate the service of a full time staff member to represent the inmate at the hearing before the Discipline Hearing Officer should the inmate so desire.... The staff representative shall be available to assist the inmate if the inmate desires by speaking to witnesses and by presenting favorable evidence to the DHO on the merits of the charge(s) or in extenuation or mitigation of the charge(s). The DHO shall arrange for the presence of the staff representative selected by the inmate. If the staff member selected declines or is unavailable because of absence from the institution, the inmate has the option of selecting another representative, or in the case of an absent staff member of waiting a reasonable period for the staff member's return,

11

or of proceeding without a staff representative.... The DHO shall afford a staff representative adequate time to speak with the inmate and interview requested witnesses where appropriate. While it is expected that a staff member will have had ample time to prepare prior to the hearing, delays in the hearing to allow for adequate preparation may be ordered by the Discipline Hearing Officer.

28 C.F.R. § 541.17(b).

Petitioner alleges that the procedures set forth in the above-cited regulation were not followed. He claims that Bittenbender informed him that he would not be permitted to have Officer White as his staff representative. According to Petitioner, Bittenbender refused to postpone the hearing to allow him to choose and meet with another staff representative. Instead, Petitioner asserts, Bittenbender immediately proceeded with the hearing and informed him that Eckroth would be his staff representative. Petitioner claims that Eckroth did not meet with him prior to the hearing, discuss the matter with him, or interview any of the witnesses requested by Petitioner. Additionally, Petitioner contends that Eckroth did not assert Petitioner's rights when Bittenbender refused to permit him to call any witnesses.

Petitioner's allegations conflict with the record in this case, which demonstrates that Eckroth's representation complied with the requirements of the regulation. Although Petitioner initially requested that Officer White be his staff representative, he agreed to have Officer Eckroth represent him because Officer White was not available to attend the hearing due to work scheduling. (Ex. I, part II.E). The record also shows that Eckroth did meet with Petitioner in advance of the hearing to discuss the case. (Id.) Bittenbender credited Eckroth's statement, and Petitioner's assertions in his administrative appeal that Eckroth acted inappropriately were rejected. (Ex. K, Ex. N).

Next, Petitioner argues that his due process rights were violated because neither his UDC hearing nor his DHO hearing was "electronic[ally] recorded" in order to verify the accuracy of the documents prepared by UDC member Sims and DHO Bittenbender. (See Docket # 3 at 7-8). Wolff does not require that a prisoner's disciplinary hearings be recorded. Additionally, the applicable regulations do not require that either the UDC hearing or the DHO hearing be recorded. 28 C.F.R. § 541.15(g) and § 541.17(g) (both the UDC and the DHO "shall prepare a record of its proceedings which need not be verbatim.") Thus, there is no merit to this claim.

Finally, Petitioner contends that Lt. Shepard was biased against him because he was a defendant

12

in <u>Speight v. Lyons</u>.  He claims that Lt. Shepard falsified the Incident Report and lied when he stated that Petitioner admitted to fighting.  As a result, Petitioner asserts, Bittenbender's finding that he committed the prohibited act is wrong.  These contentions do not entitle Petitioner to habeas relief because there is "some evidence" to support Bittenbender's finding and therefore the due process requirement set forth in <u>Superintendent v. Hill</u>, 472 U.S. 445 (1985), is satisfied.  Bittenbender relied on and credited the Incident Report; the memoranda from Lt. Shepard and the other officers; the injury assessment forms showing that both Petitioner and Stringfield had sustained injuries consistent with a fight; photographs of each inmate's injuries; and Petitioner's admission that he had argued with his cellmate prior to the incident.  He determined that the greater weight of the evidence supported the finding of that Petitioner committed the prohibited act of fighting with another person.   He also specifically stated that he believed the information provided by the staff members involved in this case, including Lt. Shepard (Ex. I, part V), and this court has no authority to review that assessment.  <u>Hill</u>, 472 U.S. at 455-56.

In conclusion, there is no basis to expunge the incident report and sanctions imposed because Petitioner has not proved that he was denied due process.  Accordingly, his habeas petition should be denied for lack of merit.

### E.      Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" <u>Szuchon v. Lehman,</u> 273 F.3d 299, 312 (3d Cir. 2001) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." <u>McCracken v. Gibson</u>, 268 F.3d

970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

However, federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


                                        S/ Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        Chief U.S. Magistrate Judge


Dated: May 15 , 2008